## JANUARY TERM, 1894.

Charles, Appellant, v. Ballin et al., Appellees.

1. Parent and Child.
It is essential, in an action against a parent to recover for goods sold and delivered to his child, to show authority to purchase goods on his credit, and this whether the child be over or under eighteen years of age.

2. Pleading.
It is better practice in an action against a parent for goods sold and delivered to his child to allege whatever may be the truth in respect to the matter, rather than to put the cause of action into the form of an allegation showing simply goods sold and delivered to the defendant.

3. Evidence—Books of Account.
In order to enable a merchant to establish the sale and delivery of goods and the value thereof by his books of account, it is necessary that the foundation for their admission be laid as provided by Gen. Stats., sec. 3642.

*Appeal from the District Court of Arapahoe County.*

Ballin & Ransohoff are merchants in Denver, who have been engaged in the dry goods trade in the city for a good many years. John Q. Charles, appellee, has been keeping house in the city during this time, and with his wife maintained an establishment in the city until she died in the summer of 1890. During the most of these years, Miss Maud Charles was a member of their family, and apparently bore to them the relation of an adopted daughter. During the year 1890, goods were bought at the store of the appellees and charged to the account of J. Q. Charles. He paid for the purchases with the exception of a bill amounting to about $375, which he declined to pay. According to the account as declared on, it amounted to a little upwards of $516, on which the merchants claimed that two amounts of $91.36 and $50.75—making a total of $142.11—had been antece-

dently paid.   The case discloses the fact to be that the bill
was not run as an entirety.   One bill amounting to $91.36
was rendered in June and paid on July 7th.   This bill ap-
pears to have been contracted during the lifetime of Mrs.
Charles.   The other one of $50.75 was contracted after her.
decease, and was paid early in September.   The items of this
latter bill were made up of charges for mourning goods fur-
nished at the date of Mrs. Charles' death.   The balance of
the bill, amounting to about $375, was contracted by Maud
Charles during October and November, and was made up of
articles which were purchased by her for a wedding trousseau.
This was understood by Ballin & Ransohoff at the time of
the sale.   The goods were sold to Miss Maud and delivered
to her, and it is conceded that she had no direct authority
from Mr. Charles to buy them on his credit.   At the time
of this purchase, Maud was a member of Mr. Charles' family,
over the age of eighteen years.   There was no proof to show
that she had any direct authority from Mr. Charles to buy
any goods at any time from that firm.   Some testimony was
offered by the plaintiffs tending to prove that during a long
period of years Miss Maud was sent to the store to buy goods
which were subsequently delivered to the house, and paid
for either by Mr. or Mrs. Charles.   The evidence plainly
shows that during Mrs. Charles' lifetime she settled all the
household accounts herself.   There is nothing in the testi-
mony to show that Miss Maud ever bought any considerable
quantity of goods at any time, either for herself or the fam-
ily's use during Mrs. Charles' lifetime, nor is there anything
to prove any purchases by her other than possibly single and
slight articles at odd times.   In other words, the case does
not establish any course of dealing between the firm and the
Charles family through the agency of Miss Maud.   The ac-
counts of the purchases made in June, July and August were
run together with the account of the subsequent purchases
by direction of counsel, evidently with the purpose of fur-
nishing a basis for the deduction that, by the payments, Mr.
Charles had admitted his daughter's authority to buy the

goods.   The case shows that Mr. Charles was in the habit of
furnishing to his family what money they might require
commensurate with his means, either for the purchase of
general supplies or their apparel.   There was no proof that
these goods bought in October and November were neces-
sary for the daughter's use or commensurate with her station,
or that Mr. Charles had failed to provide her with whatever
was requisite and necessary.   No proof was made in the
case concerning the value of the articles sold other than that
which might be derived from the prices which appeared on
the books of the firm and the bill of particulars, both of
which were offered in evidence.   In introducing the books,
the only person who testified to them was Charles Hard, who
was the general bookkeeper of the firm, and who had general
oversight over the books which were kept by other clerks
employed for that purpose.   Hard himself did not keep the
books nor make the charges on them.   The clerks who made
them were not produced, nor were they shown to be dead or
out of the country.   No member of the firm testified that
the books were true and just, nor that they were correctly
kept.   The statute governing the introduction of books in
this state is section 3642, General Statutes of 1883, and is as
follows :   " When in any civil action, suit or proceeding, the
claim or defense is founded on a book account, any party or
interested person may testify to his account book, and the
items therein contained ; that the same is a book of original
entries, and that the entries therein were made by himself,
and are true and just, or that the same were made by a de-
ceased person, or by a disinterested person, a nonresident of
the state at the time of the trial, and were made by such de-
ceased or nonresident person in the usual course of trade,
and of his duty or employment to the party so testifying ;
and thereupon the said account book and entries shall be
admitted as evidence in the case."

On this proof judgment for the value of the goods was
rendered against Charles, who prosecutes this appeal.

Mr. JOHN R. SMITH, for appellant.

Mr. V. D. MARKHAM and Mr. HARRY CARR, for appellees.

BISSELL, P. J., delivered the opinion of the court.

According to our view of the law, it is a matter of no. moment to determine whether, at the time of the alleged purchase, Miss Charles was an adult because she was over the age of eighteen years, or whether, at that time she was still a minor and therefore *sub potestate patri*. In either event, her authority to purchase goods on the credit of her father must still be shown by plaintiffs. In the one case that burden might be well sustained by proof of a course of dealing which would warrant the implication of a grant of power, or by proof of actual authority conferred by the father. In the other, if the latter proof were not satisfactorily made, the plaintiffs would not only be compelled to show a course of dealing between the parties which would warrant the deduction, but probably they would likewise be compelled to show that the things purchased were what are always classed by the law as necessaries, and a failure on the part of the father to properly supply the child. While we do not regard the evidence as at all satisfactory in either view of the case, and are not persuaded that there was any such authority given by Mr. Charles as would render him liable for the bill, we might not, were this the only available error, reverse the judgment. There is some evidence to support the finding of the court with respect to the existence of the authority, although to our minds it is not proof which thoroughly supports the judgment. The issue in respect to the majority of the daughter was not presented by the pleadings, nor did they plainly raise the questions which might be presented if the suit had been brought as upon an account for goods sold and delivered to one upon the authority of another. We

are consequently disinclined to authoritatively express our views on these matters.

Counsel for appellant insists that in no event could the plaintiffs recover on their complaint, since it is an ordinary plea of goods sold and delivered to the defendant which will not permit proof of the sale and delivery of goods to one, and the recovery of the price from another who is named as defendant. Some of the early authorities are cited which seem to hold that this would result in a variance. We would not regard this as a necessarily fatal departure of the proof from the pleadings, if the proof had satisfactorily established the defendant's liability. It must be conceded, however, that under our system, which is one requiring a statement of the facts out of which the cause of action grows, it is far better to allege whatever may be the truth in respect to this matter, rather than to put the cause of action into the form of an allegation showing simply goods sold and delivered to the defendant. What has already been said concerning the objections urged on our consideration has more reference to the course of any subsequent proceedings that may be taken in this case, than to the discussion of questions which are regarded as determinative of what we must do with the judgment.

The fatal error committed by the trial court was in admitting the books and the bill of particulars in support of the plaintiffs' claim without the foundation rendered necessary by the statute. The proper construction of the statute and the determination of what must be done to render books admissible in actions brought for goods sold and delivered by an individual or by a firm is made very plain by the decision of the supreme court in *Farrington v. Tucker et al.*, 6 Colo. 557.

There are some slight differences between the common law rule which permitted the introduction of mercantile books and that provided by the statute. These differences are of no moment so long as the statute exists. In order to enable the merchant to establish the sale and delivery of his mer-

chandise, and the value of the goods sold by the production of his accounts, it is necessary that he show the books to be true and just and that he made them, or that by reason of facts which he establishes, he is relieved of this burden. In this case neither was done. The accuracy of the books was not established by the evidence of the parties or of any person interested, nor were the clerks who kept them shown to be either dead or out of the country. Under these circumstances, manifestly the books ought not to have been admitted. If there was other evidence in the record which clearly showed the sale and delivery of the goods and what the price and value of the merchandise was, the error would not be one so prejudicial to the rights of appellant as to compel us to disturb the judgment. Since, however, the books were inadmissible and there is no other proof in the record showing the price and value, and nothing really showing the sale and delivery of the goods, we are compelled to send the case back for another trial.

For the error committed by the court as stated in this opinion, this judgment is reversed and the cause remanded for a new trial.

*Reversed.*